ARTHUR KNOELLER and Another, Plaintiffs, *v.* AUGUST H. KARSTEN and Another, Doing Business as A. & H. KARSTEN, Defendants.*

City Court of New York, Bronx County, June 27, 1935.

*Anthony C. Consentino,* for the plaintiffs.

*Philip Kranzbaum,* for the defendants.

EVANS, J.   Early in January, 1933, the parties entered into a contract by which, for a period of two years, defendants were required

---

* Affd., App. Term, First Dept., Nov. 1, 1935 (no opinion), N. Y. L. J. Nov. 2, 1935, p. 1646.

to sell and deliver to plaintiffs milk, in quart bottles, at a price which was to be " five cents less than the current retail delivery price, for quart bottled milk, as charged by Borden's Farm Products Co. to retail customers."

Plaintiffs had a retail milk route, and had put themselves in a position of advertising defendants' brand of milk, so that they could not easily change their source of supply. In spite of the written contract, defendants raised their prices, breaching their contract. Plaintiffs paid the advanced prices and now sue to recover the overpayment.

Defendants justify the overcharges on the ground that orders of the Milk Control Board and the Division of Milk Control had fixed minimum prices, which were larger than the contract price, and which superseded the contract.

Plaintiffs do not raise the question that the legislation creating the Milk Control Board and its successor and conferring upon it the power to fix minimum and maximum prices is invalid, in so far as it attempts to regulate the prices of milk, already the subject of a contract. The only question involved is whether the Milk Control Board did in fact fix a minimum price for bottled milk, passing from dealer to dealer, in the locality where these parties conducted their business, and whether, if it did, it had authority under the law to do so. It is conceded that the successor to the Milk Control Board did fix such prices and had authority so to do, regardless of the existing contract between the parties. (*People* v. *Nebbia*, 262 N. Y. 259; affd., 291 U. S. 502.)

In the 1933 legislation (Laws of 1933, chap. 158), section 312,* under the heading " Order fixing price of milk," the Milk Control Board is given authority to fix a minimum and maximum price for milk sold (1) at wholesale and retail; (2) by milk dealers to consumers; (3) by milk dealers to stores, and (4) by stores to consumers. This legislation apparently did not specifically include sales from dealer to dealer. Under it the Milk Control Board fixed prices, by various orders, but in none of them are prices specifically fixed in dealer to dealer sales, nor for sales of bottled milk, in the locality where these parties did business.

In the 1934 legislation (Laws of 1934, chap. 126), section 258-m,* under the heading " Order fixing prices and handling charges for milk," in subdivision b thereof, the Division of Milk Control is given the same powers as the original Milk Control Board, together with additional powers, among them to fix maximum and minimum prices in sales from dealer to dealer. Under this legislation the

---

* Agriculture and Markets Law.— [REP.

Division of Milk Control fixed prices specifically for bottled milk. The latter legislation and order issued thereunder specifically covers the contract between the parties at bar.

In the *Nebbia Case (supra)* a retailer was convicted for not observing the order of the Milk Control Board by selling bottled milk for less than nine cents a quart. It is apparent, from the opinion, that the Board fixed nine cents as the retail price of milk, per quart bottle, in that locality. The evidence at bar, however, does not show that any price was fixed, for the locality involved, for bottled milk. In the *Nebbia* case the question of the authority of the Milk Control Board to regulate prices between dealer and dealer was not involved. There is nothing in the *Nebbia* case that compels a holding that the 1933 legislation authorized the Milk Control Board to fix prices between dealer and dealer.

The Milk Control Board did have authority to regulate wholesale and retail prices of milk. But apparently it was questionable whether sales among dealers constituted wholesale or retail business, and whether the 1933 legislation authorized the Milk Control Board to regulate such business. The 1934 legislation set the matter at rest, by specifically authorizing the Division of Milk Control to regulate dealer to dealer business. The matter, being questionable in the mind of the Legislature, still remains of the same nature. Questionable language, in legislation, should not be construed in derogation of contract rights.

I think the orders of the several boards must be strictly construed. No prices were fixed for sales between dealers and for bottled milk in the locality involved, until the Division of Milk Control issued its orders, under authority of the 1934 act.

When defendants first raised their price, disregarding the contract, there was no order issued by the Milk Control Board requiring them to do so. The orders of the Milk Control Board, subsequently issued, did not alter the contract price between the parties, but that seems to have furnished the excuse for the raise in price. The order of the Division of Milk Control, made after the 1934 legislation, legalized defendants' breach of the contract, from the date the order became effective.

As to the facts, therefore, I find that plaintiffs paid more than the contract price, under business compulsion, until the order of the Division of Milk Control was issued fixing the price for bottled milk. But plaintiffs may recover the overcharge only as to the milk sold directly to them for the so-called " route 10," and not for " route 11." Defendants are entitled to their counterclaim. Plaintiffs may recover the overcharges only for the period when no price was fixed for sales of bottled milk and for sales from dealer to dealer.

Judgment accordingly for plaintiffs for $667.94.